**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FELICIA QUIZEL MORGAN, by
her Next Friend, Laura Campbell,

      Plaintiff,                        Case No. 17-12094

v.                                 Hon. Marianne O. Battani

WAYNE COUNTY, OFFICER LEONARD
DAVIS, OFFICER CLARK, SERGEANT
ARELIA PENDERGRASS. COMMUNITY
HEALTHCARE PROVIDERS, INC., in their
Individual Capacity, jointly and severally,

      Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants, Leonard Davis, Keisa Clark, Arelia Pendergrass,

and Wayne County's Motion for Summary Judgment.  The Court has reviewing the

relevant filings, and for the reasons that follow, the motion is **GRANTED.**

**I.**     **INTRODUCTION**

Plaintiff Felicia Quizel Morgan filed suit on June 27, 2017, asserting federal civil

rights claims under 42 U.S.C. § 1983 and state law claims against Wayne County, its

employees, and Community Health Care Providers, Inc. ("CHCP") arising from Plaintiff's

November 15, 2005, sexual assault by another inmate, Eric Miles.  Plaintiff became

pregnant and gave birth the following year.  At the time of the alleged assault, both were

being treated at a mental health care facility operated by CHCP under a contract with

the Wayne County Jail ("WCJ").[1]  Morgan had been transferred from the WCJ to the CHCP facility for psychiatric evaluation and treatment after she was charged with assaulting a corrections employee.

Defendant Wayne County filed a previous motion to dismiss and for summary judgment, arguing that Plaintiff's federal and state law claims arising from her 2005 assault are barred by the applicable statutes of limitation; that Plaintiff failed to allege viable claims of municipal liability under 42 U.S.C. § 1983, and that Michigan's governmental immunity statute, Mich. Comp. Laws § 691.1401 et seq., barred the state law claims asserted by Plaintiff against the County.

The Court granted in part and denied in part the prior motion, holding that Plaintiff's state law claims against Wayne County were barred by governmental immunity, and allowing Plaintiff to engage in discovery relative to her federal claims against Wayne County (ECF No. 24).  In its opinion and order, the Court detailed the facts as alleged by Plaintiff including the facts giving rise to Plaintiff's placement at UCH and the assault as well as Plaintiff's involvement in other court proceedings.  (ECF No. 24 at 3-7; see also ECF No. 66, Exs. 34-39).  The Court found that Morgan had met her burden to show questions of fact existed regarding the statute of limitations issue. To the extent the parties rely on the same facts in this summary judgment motion, the Court incorporates those facts from its previous opinion and order and sets out a

---

[1]Although Plaintiff filed this suit on her own behalf, on February 22, 2018, the Court appointed Plaintiff's aunt, Laura Campbell, to serve as Plaintiff's next friend in this action.  See Fed. R. Civ. P. 17(c)(2).

summary below.  To the extent that new facts are argued in support of the motion, the
Court addresses them in its analysis.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff had been diagnosed at a young age with severe schizophrenia and
bipolar disorder.  In 1997, Morgan began serving a sentence at a Michigan Department
of Corrections ("MDOC") facility following her state court conviction of assault with intent
to commit great bodily harm.  She was prescribed anti-psychotic medications while
incarcerated at the MDOC facility in order to treat her mental illness.

While she was serving her sentence, Morgan allegedly assaulted a corrections
employee.  Nearly two years after the assault, in August of 2005, Plaintiff was
transferred to the WCJ so she could attend court proceedings related to the assault.  As
a result of Plaintiff's unpredictable behavior while incarcerated at WCJ, including
hallucinations, she was transferred to United Community Hospital ("UCH") for
psychiatric evaluation and treatment.  (Id. at ¶¶ 21-23.)  Defendant Community Health
Care Providers, Inc. ("CHCP") operated the facility under a contract with Wayne County
and provided mental health evaluation and treatment to inmates.

On July 11, 2016, Plaintiff commenced a federal court suit that was essentially
identical to the present action.  (Case No. 16-12579).  Plaintiff voluntarily dismissed the
case on August 2, 2016, before the defendants had responded to the complaint.  Within
a year, on June 27, 2017, she brought the present suit asserting federal claims under
42 U.S.C. § 1983 and state law claims of wrongful conception, negligence, and gross
negligence against Defendants Wayne County, CHCP, and one or more unidentified
Wayne County deputy sheriffs arising from the sexual assault she allegedly suffered at

UCH in November of 2005 while being treated for mental impairments.  Plaintiff

amended her complaint to add the names of the Wayne County employees.  (ECF No.

20).

## III.   STANDARD OF REVIEW

Under the relevant Federal Rule, summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has

explained, "the plain language of Rule 56[] mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in

a light most favorable to the party opposing the motion, giving that party the benefit of

all reasonable inferences."  Smith Wholesale Co. v. R.J. Reynolds Tobacco Co., 477

F.3d 854, 861 (6th Cir. 2007).  Yet, the nonmoving party may not rely on bare

allegations or denials, but instead must support a claim of disputed facts by "citing to

particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

IV. **ANALYSIS**

A. **Tolling the Three-Year Statute of Limitations**

The parties disagree as to whether Plaintiff has the type or severity of a mental health condition that would permit her to toll the governing statutes of limitations. The parties agree that each of Plaintiff's claims in this case is subject to a three-year period of limitation. See McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988) (observing that for federal claims brought under 42 U.S.C. § 1983, courts apply "the [forum] state['s] statute of limitations governing actions for personal injury"); Mich. Comp. Laws § 600.5805(10); Mich. Comp. Laws § 600.2971. Moreover, the standards governing the accrual of Morgan's federal and state law claims are essentially the same, and there is no dispute that her claim accrued in 2005.

In denying Wayne County's prior motion to dismiss on the statute of limitations, the Court found that Morgan's allegations of insanity were sufficient to withstand the dismissal of her claims as time-barred and allowed discovery. In discussing the merits of the motion, the Court observed that absent tolling, Morgan would have needed to file suit by November of 2008, not over eight years later, in June of 2017. See Cooey v. Strickland, 479 F.3d 412, 416 (6th Cir. 2007) (internal quotation marks and citations omitted) (noting that under federal law, "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred"); Stephens v. Worden Ins. Agency, LLC, 59 N.W.2d 723, 733 (Mich. Ct. App. 2014) (internal quotation marks and citations omitted) (holding that under Michigan law, "[a] tort claim accrues when all the elements of the claim have occurred and can be alleged in a proper complaint"); see also Mich. Comp. Laws §

5

600.5827 (providing that a claim generally "accrues at the time the wrong upon which the claim is based was done[,] regardless of the time when damage results").

However, under Michigan Compiled Laws § 600.5851(5), a person who is legally insane at the time a claim arises may commence the action after the disability ceases. Subsection (1) of the statute provides that such person has an additional year after the disability is removed to commence the action after the statute of limitations has run.  Id. § 600.5851(1).  To qualify as legally insane under this tolling statute, a person must suffer from "a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know," but the person need not have "been judicially declared to be insane."  Mich. Comp. Laws § 600.5851(2).  The condition of insanity "must exist at the time the claim accrues," and "[a] person shall not tack successive disabilities."  Mich. Comp. Laws §§ 600.5851(3),(4).

Accordingly, Defendants will prevail in their request for summary judgment because Plaintiff's claims are time-barred, unless Plaintiff can establish (I) that she was "insane" within the meaning of the statute when her claims accrued in November of 2005, and (ii) that she continuously suffered from this disabling condition until at least June of 2016, a year before this suit was filed.  See Curran v. City of Dearborn, 957 F. Supp.2d 877, 884 (E.D. Mich. 2013); English v. Bousamra, 9 F. Supp.2d 803, 808 (W.D. Mich. 1998) (holding that the plaintiff has the burden of demonstrating her entitlement to tolling under § 600.5851).

The parties in this case can find support in the record for their respective positions, just as they did before formal discovery occurred, including evidence showing Morgan had adequate perception, memory, or understanding; lives independently; has

6

been involved in past litigation; and presents past reports from her parole officer, and a report from the Center for Forensic Psychiatry concluding that Morgan was not legally insane at the time of a 2013 assault and was competent to stand trial (ECF No. 66, Exs. 75 and 75).  That report was based on a two-hour interview with Morgan, reviews of police report, records from four prior referrals, MDOC records from 1997 through 2013, and a recording of the alleged assault.  Defendants additionally rely on the fact that Morgan filed a lawsuit based on the assault in July 2016.  Under the law, Plaintiff "is presumed to have known about her cause of action" when she brought this prior suit. Bradley v. Macomb County, 370 F. Supp.2d 607, 611 (E.D. Mich. 2005) (noting noted that the plaintiff had "br[ought] this present action in his own capacity, without a representative," and concluded that he therefore "must have been competent on or before" the date the suit was filed).

In the Court's prior opinion, it declined to hold that Plaintiff's record of regular involvement in judicial proceedings rendered her unable to show she was entitled to tolling.  The Court distinguished the Bradley decision, in particular noting that the evidence in that case included a statement that affirmatively "indicate[d] that [the plaintiff] was able to articulate his rights."  Id., 370 F. Supp.2d at 611.  Also, the Court addressed case law that a plaintiff's ability to confer with or retain a lawyer serves as "some evidence" that the plaintiff does not meet the Michigan tolling statute's definition of "insane," but noted "it does not conclusively establish that fact."  (See ECF No. 24, pp. 14-17 and cases cited therein).

The issue here is not Morgan's awareness of the assault; it is whether she was and has been continuously incapable of "comprehending [her] rights" within the

7

meaning of Mich. Comp. Laws § 600.5851(2).  Plaintiff points to record evidence that shows she did not comprehend her rights, but instead, was assisted by others in bringing legal claims.  The real dispute is whether there is grounds for finding her continuously incapable.  A significant hurdle to Defendants' request for summary judgment is the 2017 assessment of Morgan by Dr. Gerald Shiener, a board certified forensic psychiatrist.  Dr. Shiener evaluated Morgan, reviewed medical records, including records from MDOC and WCJ.  Based on the records and evaluation, Dr. Shiener opined that Morgan has suffered from "legal insanity" from the time of her rape up to and through the present time.  According to his report, Morgan

> suffers from a severe mental illness that would meet the definition and criteria of a severe disorder of thought and mood, and that her severe mental illness impairs her ability to understand her rights under the law.  It is my further opinion that she has suffered from this impairment in  thought and mood continuously from the time of her incarceration to the present. Even though her symptoms wax and wane, the underlying  thought disorder is persistent and always present.  At the time of the  rape, she was referred for in patient psychiatric care at a level unavailable in the Wayne County Jail, which implies a severity of symptoms requiring hospital care.  Clearly she was 'insane' at that time.  It is my opinion that her impairment has been continuous and always present to a degree that impairs her ability to appreciate her rights under the law.

> I would advise the Court that she would be considered 'insane' (a legal term) due to the persistent impairment in her ability to think in a logical, coherent and goal-directed manner, a significant impairment in her ability to control her impulses, and a continuous impairment in her ability to differentiate reality from inner fantasy.  Given the degree of impairment present due to her illness, a legal representative for purposes of litigation would be necessary to act in her behalf.

> I would stress that the impairment that interferes with her ability to appreciate her rights under the law lies in the disordered thinking, and the altered thought processes that accompany this illness and that occur independent of psychotic symptomatology.  Although medication may control the more intense and severe symptoms of psychosis, the disordered thinking and the illogical thinking result in an inability to

8

comprehend issues like rights under the law – even in periods where
psychosis is not active.

(ECF No. 15, Exhibit A, Dr. Shiener Report, pg. 9-10).

Defendants offer the independent psychiatric evaluation preformed by Dr. David
Rosenberg, board certified in psychology and neurology, to contest Plaintiff's expert.
Dr. Rosenberg provided a supplemental report to his May 1, 2019 independent medical
examination, which involved an in-person assessment, a review of Plaintiff's video
deposition, and Dr. Shiener's report and medical records.  Dr. Rosenberg
acknowledged Morgan's diagnosis of schizoaffective disorder, mixed type, but noted her
ability to live independently.  He found her alert and oriented, with good attention and
concentration.  (ECF No. 66, Ex. 83).  Dr. Rosenberg found Plaintiff's "condition and
sensorium remain remarkably intact with excellent immediate, short-term and long-term
memory, excellent attention, concentration, and performance on a variety of cognitive
tasks" to be "highly significant given her schizoaffective disorder."  Id.

Defendants rely on Dr. Rosenberg's conclusion that "there is no scientific way for
any expert to be able to opine on [Morgan's] mental state in the past" to challenge Dr.
Shiener's opinion.  Dr. Rosenberg opines that no "valid techniques" exist to do so
reliably.  He adds, "it is simply not possible clinically reasonable nor scientifically sound
to be able to say that she has continuously without interruption since November 2005
been unable to comprehend her legal rights regarding the incident," and points to
evidence in the records that suggests to the contrary.  (Id.)

Defendants first raise the challenge to Dr. Shiener's report in their reply, despite
having his report when Wayne County filed its motion to dismiss.  Defendants did not

9

file a motion to strike.  The generalized attack on his methodology is simply too little, too late.  Therefore, the Court declines to award summary judgment on this ground.

### B.  Qualified Immunity for Individual Defendants

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the violation of a constitutional right, and (2) show that the violation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Here, Morgan asserts a claim under the Eighth Amendment, which requires prison officials "to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  Such conduct violates the Eighth Amendment when it is both "sufficiently serious," and when the prison officials are "deliberately indifferent" to the inmate's health or safety.  Id. at 834.

"Deliberate indifference" has both an objective and a subjective component.  Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006).  In order to establish the subjective component, Plaintiff must present evidence that the prison official was subjectively aware of, and disregarded, the risk of harm to the prisoner.  Id. at 424.  In other words,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. . .and a factfinder may conclude that a

10

prison official knew of a substantial risk from the very fact that the risk was obvious."
Id. at 842.  But, a prison official who was not aware of a substantial risk of harm may not
be held liable under the Eighth Amendment, even if the risk was obvious and a
reasonable official would have noticed it.  Id. at 841-42.

The parties disagree as to whether the individual Defendants, Deputy Clark,
Deputy Davis, and Sergeant Pendergrass, may avail themselves of qualified immunity
relative to Plaintiff's Eighth Amendment claim that they were deliberately indifferent to
Morgan's substantial risk of suffering an assault.  The doctrine of qualified immunity
shields government officials performing discretionary functions unless their conduct
violates clearly established constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982).  To assess whether a defendant is entitled to qualified immunity on
summary judgment, courts view the acts in the light most favorable to the plaintiff and
assess whether a reasonable juror could find that: (1) the defendant violated a
constitutional right; and (2) the right was clearly established.  Pearson v. Callahan, 555
U.S. 223 (2009).   In determining whether a defendant who "actually knew of a
substantial risk to inmate health or safety," is entitled to immunity, courts consider
whether he "responded reasonably to the risk, even if the harm ultimately was not
averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

With these standards in mind, the Court turns first to whether the constitutional
right at issue was clearly established, and finds that there is no dispute that it is.
Farmer, 511 U.S. at 833 (internal quotation marks and citation omitted).  Next, the Court
must assess whether the defendants violated a constitutional right.  In this regard,
Morgan must show (1) the alleged mistreatment was objectively serious; and (2) the

defendant subjectively ignored the risk to the inmate's safety.  Farmer, 511 U.S. at 834.

Here, the Court evaluates the evaluate the liability of each individual Defendant. Phillips

v. Roane Cnty., Tenn., 534 F.3d 531, 542 (6th Cir.2008) (when deciding qualified

immunity defenses "the court should consider whether each individual defendant had a

sufficiently culpable state of mind").

### 1. Deputies Clark and Davis

At the outset, the Court notes that both Clark and Davis were knowledgeable

about the physical lay-out of the unit, including that males and females were housed in

the unit, that blind spots existed, and that doors were not locked.

In addition to knowledge of the shortcomings of the physical layout, Clark

acknowledged that three officers were assigned to each shift at UCH.  One worked the

desk, one conducted rounds, and one sat in the dayroom and observed the hallway in

order to keep watch over the inmates.  Clark was aware that the blind spots on the ward

created the need for an officer to be in the dayroom.  Clark, who was covering the desk

on the date of the assault, could not see the blindspots while seated at the desk.  She

knew there were two females in the unit.  She also admitted that Miles had been

hospitalized previously, that Miles flirted with women, and that he was sexually

preoccupied, but stated he was not violent.  Clark testified that sexual preoccupation

was common among inmates. It is further undisputed that there was a huge disparity in

the size of Miles and Morgan.

Clark admitted at the time of the assault, Hunter had left for lunch, and Davis was

in the restroom.  (ECF No. 66, Ex. 10).  Further, Clark conceded that someone should

have been in the dayroom, or roamed the hallways more.  She admitted that the inmate

population suffered form severe mental illness.  Based on these facts, Morgan asserts that a question of fact exists as to whether Clark was subjectively aware and deliberately indifferent to the safety needs of Morgan.

Likewise, Davis knew Hunter had gone to lunch when he went to the restroom. He admitted it was difficult to separate inmates by gender because of lack of space.  He knew that the inmates suffered with mental issues.  He knew three officers staffed the unit for security purposes.  He admitted that because the physical set up of the ward created blind spots, one officer was stationed in the day room.  He did not perceive Miles as a threat to Morgan.  In his Declaration, Hunter affirms that there had been no incidents of sexual contact among patients prior to November 15, 2005. (ECF No. 66, Ex. 39, ¶ 6).  He also states that Miles and Morgan had conversed in a friendly manner when they were in the day room.  (Id., ¶ 7).  According to Hunter, when he left the day room, there was UCH staff in the area, and there had no been a prior incident when on of the deputies was off the ward.   (Id., ¶ 11).

Morgan argues that Defendants' testimony shows she was incarcerated under conditions posing a substantial risk of harm, and believes the facts create a jury question as to whether Clark or Davis subjectively ignored the risk to her safety.  She relies on the decision in Bishop v. Hackel, 636 F.3d 757, 767 (6th Cir. 2011) to support her position.  In that case, the physical structure and the personal characteristics of the plaintiff rendered him vulnerable, and she concludes that the same can be said here. Specifically, just as was the case in Bishop, here Clark was subjectively aware that Miles was sexually preoccupied and the layout of the ward increased the risk of abuse without observation.  Davis likewise is not entitled to qualified immunity.  He knew that

13

Hunter had gone to lunch and Clark was at the desk when he went to the restroom. Davis was aware of the blind spots, the difficulty in keeping inmates separated by gender because of the lack of space and that the inmates

To meet the deliberate indifference criteria, Morgan must show the officers knew of and disregarded "an excessive risk to inmate health or safety; the offic[ers] must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and. . .must also draw the inference." Id. at 837.   Even if the Court found the facts, taken as a whole show that Clark and Davis could have inferred that a substantial risk of harm existed, they must draw the inference and disregard it. Farmer, 511 U.S. at 834, 837, 839.   There is no evidence to support that they did.  It is undisputed that Morgan made no complaints or comments about Miles.  Neither Clark or Davis had any reason to believe that an assault would occur:  Miles had not demonstrated any propensity for violence while in custody; there had been no prior incidents of sexual activity among the inmates, and although UCH employees were not responsible for security, there were three employees on the ward at the time of the incident.  Plaintiff was not left alone.  Although Davis left to use the bathroom, there simply is no evidence that he knew his conduct would expose Morgan to a high risk of harm.

The Court's assessment is not what could have been done differently or better, but whether the conduct demonstrated they were deliberately indifferent to the "reasonable safety" of Morgan  Id. at 844.  Even when viewed in the light most favorable to Morgan, Plaintiff's argument sounds in negligence, not deliberate indifference. See Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012) ("Deliberate indifference is

14

characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error.").

### 2.  Sergeant Pendergrass

To be liable as a supervisor under § 1983, Sergeant Pendergrass had to have condoned, knowingly acquiesced in, "encouraged the specific incident of misconduct or in some way directly participated in it."  Turner v. City of Taylor, 412 F.3d 629, 643 (6th Cir. 2005) (citation omitted).

Although Pendergrass was not on site during the assault, she was the deputy's supervisor.  As the supervising officer in charge of Clark and Davis, she was responsible for the deputies' daily activities during their shifts.  Yet, she was unable to recall the policy about the minimum number of officers, and responded that officers did not have to notify her when they were taking breaks.  Her testimony directly contradicts the written policy.

Under the policy, officers assigned to UCH shall be "self-relieving for lunch with two officers remaining on the unit at all times.  Any officer leaving for lunch shall contact Division I shift command for permission.  (Doc. No. 73, Ex. K).

Plaintiff's argument is undermined by that fact that she failed to establish that Hunter did not contact shift command or that Pendergrass was "Division I Shift Command" for purposes of the policy.  Regardless, she was unaware of the circumstances.  Finally, there is no causal connection between an alleged violation of the policy by Pendergrass and any injury.  The policy did not require an officer to contact his supervisor for permission to use the bathroom, and Pendergrass, who was not on site, could not have known that only one officer was in the unit.

15

### C.      Municipal Liability Claim

In Counts II and III of her complaint, Morgan asserts claims against Wayne

County under 42 U.S.C. § 1983 arising from her November 2005 sexual assault.

Wayne County "cannot be held liable under § 1983 for an injury inflicted solely by its

employees or agents."  Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000)

(citing Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978)).  Therefore, to

establish liability, Plaintiff mst show that the execution of Defendant's policy or custom

resulted in a constitutional tort."  Gregory, 220 F.3d at 441.  In addition, Morgan must

show that "through its deliberate conduct, the [County] was the 'moving force' behind"

the violation of [Plaintiff's] constitutional rights — that is, it "must show that the municipal

action was taken with the requisite degree of culpability and must demonstrate a direct

causal link between the municipal action and the deprivation of federal rights."  Gregory,

220 F.3d at 442 (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S.

397, 405, (1997)).

Wayne County contends that Plaintiff cannot establish an underlying

constitutional violation.  The Court agrees.  In Burgess v. Fischer, 735 F.3d 462, 278

(6th Cir. 2013), the court identified four theories of municipal liability:  an

unconstitutional legislative enactment or official written policy; ratification of illegal

actions by an official with final decisionmaking authority; a policy of inadequate training

or supervision; a custom of tolerance of acquiescence of constitutional violations.

Plaintiff argues two bases for liability: Wayne County's "unconstitutional policy,

custom and practice of housing both male and female inmates in a coed facility without

adequate security thereby exposing them to mentally ill inmates, and its failure to adequate train and supervise its officers.

### 1. Policy

The terms of the WCJ contract with UCH required the Jail to "establish and communicate ward security procedures to Hospital."  (ECF No. 73, Ex 13).  The policy governing security procedures at UCH related to rounds, reporting, and maintaining a logbook.  Under the policy, a minimum of two deputes were to remain on the ward if one left the premises.  (ECF No. 73, Ex. 6).  Specifically,

> Officers assigned to United Community Hospital shall be self-relieving for
> lunch with two officers remaining on the unit at all times.  Any officer
> leaving for lunch shall contact Division I shift command for permission.

(ECF No. 73, Ex. K).  Once a plaintiff has specifically identified a County policy or custom, she must advance evidence to show that it was the moving force behind the violation of her constitutional rights.

In support of her claim that the policy is constitutionally deficient, Morgan relies on the conditions occurring during her confinement at UCH, including the fact that there was no security or locked doors separating the male and female inmates.  (ECF No. 73, Ex. 40).   Moreover, at times, males were housed on the same side of the floor as females because of lack of space, although that was not the situation when Plaintiff was assaulted.  (Id.)  Although Females were not allowed in rooms assigned to male inmates, there were no locks on room doors.  Morgan points to a bevy of evidence to support her theory: testimony that patients crawled around to escape notice; an admission from one of the officers working on the date of the assault that she had no

specialized training in mental health; the supervising officer's failure to ensure that the two deputy policy was followed; and that the deputies failued to inform shift command when they left the unit for lunch.  In addition, despite the officers' knowledge that there were blind spots such that it was necessary for an officer to be stationed in the day room, there was no policy in place to ensure that when an officer stationed in the day room left the ward, another officer would take his or her place.

The Court finds the policy, while perhaps not perfect, is not facially unconstitutional.  Pursuant to the policy, rounds were required every 30 minutes, and after rooms were checked, other areas were checked.  "Females were to be housed as close to the nurses' station as possible."  (ECF No. 73, Ex. K, p. 4).  There is no evidence that the policy had been inadequate to protect females, particularly because no previous incidents of sexual assault by an inmate on an inmate are part of the record.

### 2.  Failure to Train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  Furthermore, the Supreme Court has held that it is possible, in light of the duties assigned to specific officers, for the need for training to be so obvious that the lack of such training would constitute deliberate indifference.  Id. at 390.

Morgan claim that the defendants were not properly trained as to how to prevent an excessive risk that inmates who are sexual preoccupied would sexually assault other

18

inmates.  She relies on the same evidence advanced regarding the policy to support her failure to train.

The Court's earlier discussion shows that Plaintiff cannot show deliberate indifference to the need for training.  Plaintiff failed to establish and prior instances of inmate to inmate sexual assaults occurring.  There is no evidence that assaultive conduct occurred when one officer was at lunch.  There simply is no evidence that Wayne County was clearly on notice that the training in this particular area was deficient and likely to cause injury.

### C.  State Law Claims Against the Individual Defendants

Individual Defendants argue that they are entitled to immunity as to Plaintiff's state law claims under Mich. Comp. Laws § 691.1407.  In her response, Plaintiff conceded that the Court already rejected her argument that her claims fell within an exception to the governmental immunity act.  The Court has no intention of revisiting the argument, which has been rejected twice–first, in its opinion and order (ECF No. 24), and, second, in its order denying Plaintiff's motion for reconsideration (ECF No. 42). Accordingly, the claims are dismissed.

### V.   CONCLUSION

For these reasons, the Court **GRANTS** the motion.  **IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine (ECF No. 76) is **DISMISSED as MOOT.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:   September 30, 2020