UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FELICIA QUIZEL MORGAN, by
her next Friend, Laura Campbell,

    Plaintiff,

v.                                                                                                  Case No. 17-12094

WAYNE COUNTY, et al.,

    Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

In an opinion and order dated September 30, 2020, the court granted a motion for summary judgment filed by Defendants Leonard Davis, Keisa Clark, Arelia Pendergrass, and Wayne County. (ECF No. 85.) Through the present motion, Plaintiff Felicia Quizel Morgan, seeks reconsideration of the court's September 2020 ruling, arguing that it should not have granted summary judgment as to Defendants Davis, Clark, and Wayne County. The court does not hold hearings on motions for reconsideration. *See* E.D. Mich. LR 7.1(h)(2). For the reasons explained below, the court will deny the motion.

**II. BACKGROUND**

In 2017, Plaintiff asserted federal civil rights claims under 42 U.S.C. § 1983 and state law claims against Defendants Defendant Community Healthcare Providers, Inc., ("CHCP"), Wayne County, and the counties' employees, arising from a November 2005 sexual assault by another inmate, Eric Miles, at CHCP's mental health care facility. (ECF No. 1) Plaintiff was transferred to CHCP's Detroit psychiatric facility from the

Wayne County Jail while still in custody. (*Id.,* PageID.5-6.) Plaintiff contends that she later gave birth to a child while she was still incarcerated as a result of the 2005 assault. (*Id.*)

In the mental health ward at CHCP's facility, both male and female inmates were housed on different sides of the same floor. (ECF No. 66-8, PageID.1215.)  Inmates of both genders could interact in the dayroom on the floor. (*Id.*) At any given time, the ward housed between three and ten inmates who were undergoing treatment. (*Id.*) The unit was usually guarded by three Wayne County Sheriff's deputies. (*Id.*, PageID.1217.) It was also staffed 24-hours-a-day with three hospital workers plus any doctors that came in and out of the ward. (ECF No. 66-9, PageID.1231.) When patients of both genders were allowed to interact in the day room, one of the hospital staff was always present in the room. (ECF No. 66-7, PageID.1208.)

On the day of the alleged assault, Defendants Davis, Clark, and Hunter were the deputies on duty. (*Id.*, PageID.1207.) Two deputies were usually stationed at the front desk by the ward's entrance. From the desk, they used mirrors and cameras to observe the ward's hallways. (*Id.*) One of the deputies from the front desk would also do a round every thirty minutes. (*Id.*) The third deputy was usually stationed in the day room because that is where inmates interacted. (ECF No. 66-8, PageID.1217.) The deputy in the day room could observe blind spots in the hallways that were not visible from the front desk. (*Id.*) The written Wayne County security policy for the facility allowed the deputies to be "self-relieving for lunch" allowing one of the three officers to leave at any given time. (ECF No. 73-6, PageID.1629.)

At the time of the alleged assault, Deputy Hunter was off the ward on his "lunch break." (ECF No. 66-7, PageID.1208.) Deputy Davis, who was stationed in the day room, left the ward for a short time to use the bathroom as there was no staff restroom inside the ward. (ECF No. 66-8, PageID.1221.) This left only deputy Clark stationed at the front desk. Deputy Davis stated in his deposition that he felt comfortable leaving the day room because a CHCP worker was stationed in the room where some of the inmates had congregated. (*Id.*)

Around the same time, Plaintiff and Miles were last seen by a CHCP staffer talking and interacting in a friendly manner in the day room. (ECF No. 66-9, PageID.1236.) A few minutes later, a CHCP staffer walking down the corridor observed Miles and Plaintiff having sex in Miles's room with the door open. (*Id.*) He immediately reported the incident. (*Id.*) According to the staffer, Plaintiff appeared to consent to the sexual encounter and did not appear in distress. (*Id.*) During the investigation following the incident, Plaintiff signed a form indicating she did not wish for any further investigation. (ECF No. 66-15, PageID.1284.) When transported to the emergency room following the incident, Plaintiff refused a rape kit and told the attending physician that she had consented to having sex with Miles. (ECF No. 66-22, PageID.1301.)

## II. DISCUSSION

To prevail on a motion for reconsideration, a party "must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3); *see also Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 924 (6th Cir. 2011). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Hawkins v. Genesys*

3

*Health Sys.*, 704 F. Supp. 2d 688, 709 (E.D. Mich. 2010) (Borman, J.). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3); *see also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015) (Steeh, J.).

Plaintiff's present motion contends the court's September 2002 opinion "expressly" held that neither Defendant Clark nor Davis were entitled to qualified immunity but that the opinion erroneously granted summary judgment to all Defendants anyway. (ECF No. 86, PageID.1718 (citing ECF No. 85, PageID.1707).) In support, Plaintiff selectively quotes language from the opinion suggesting the court actually held that two deputies were not entitled to qualified immunity. (*Id.*)

A block quote of the whole paragraph, however, gives the reader greater context and shows that the court's language in the paragraph was a summarization of Plaintiff's argument *not the court's ultimate holding on qualified immunity issue* in the present action.

> [Plaintiff] *argues* that Defendants' testimony shows she was incarcerated under conditions posing a substantial risk of harm, and believes the facts create a jury question as to whether Clark or Davis subjectively ignored the risk to her safety. She relies on the decision in *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011) to support her position. In that case, the physical structure and the personal characteristics of the plaintiff rendered him vulnerable, and she concludes that the same can be said here. Specifically, just as was the case in Bishop, here Clark was subjectively aware that Miles was sexually preoccupied and the layout of the ward increased the risk of abuse without observation. Davis likewise is not entitled to qualified immunity. He knew that Hunter had gone to lunch and Clark was at the desk when he went to the restroom. Davis was aware of the blind spots, the difficulty in keeping inmates separated by gender because of the lack of space. . . .

4

*Morgan ex rel. Campbell v. Wayne Cty.*, 2020 WL 5819570, at *6 (E.D. Mich. Sept. 30, 2020) (emphasis added).

The court later found that the evidence cited by Plaintiff in the preceding blockquote was insufficient to show that a question of fact remained with regards to whether Davis or Clark should be denied qualified immunity. *Id.* ("Plaintiff was not left alone. Although Davis left to use the bathroom, there simply is no evidence that he knew his conduct would expose [Plaintiff] to a high risk of harm."). While the analysis provided with regards to Clark and Davis perhaps could have been clearer, the holding that both Davis and Clark are entitled to qualified immunity is correct.

In order to establish a failure to protect claim under the Eighth Amendment and overcome a qualified immunity defense, a plaintiff must demonstrate that a prison official, in this instance sheriff deputies guarding the psychiatric ward, acted with "deliberate indifference" toward a risk. *See Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir. 1998). To show that the officer acted with "deliberate indifference" to an "excessive risk" faced by a prisoner requires more than a showing of negligence. *Farmer*, 511 U.S. at 835, 837. Instead, the *subjective* standard imposed requires an inquiry into "whether [an officer] had knowledge about the substantial risk of serious harm to a particular class of persons." *See Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 80 (6th Cir. 1995). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quotation omitted). The defendant must not only be subjectively aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, but they must also draw

5

that inference and disregard the risk. *Phillips*, 534 F.3d at 539-40; *Sours v. Big Sandy Reg'l Jail Auth.*, 593 Fed. Appx. 478, 484 (6th Cir. 2014).

It is undisputed that both Clark and Davis possessed knowledge about the physical layout of the ward where housed, including blind spots. And Defendants were, as a general matter, aware of Plaintiff's vulnerability as a female inmate being housed in a co-ed ward. However, this evidence is simply not enough to establish a question of fact regarding whether the officers subjectively believed that Davis's momentary decision to leave his post constituted a substantial risk to the inmates.

The deputies were not informed of the specific illnesses of each patient, and there was no indication that the interactions between Plaintiff and Miles were anything but friendly. (ECF No. 66-9, PageID.1242.) It also uncontested that prior to the 2005 incident, the deputies were aware of no incidents of "consensual or non-consensual sexual contact" in the ward. (ECF No. 66-7, PageID.1207.) The deputies also believed that one of the three hospital staffers on duty in the ward was present in the day room and could observe both Plaintiff and Miles. (ECF No. 66-9, PageID.1231.) While both Davis and Clark may have been aware that Davis's short bathroom break somewhat increased the risk of inappropriate interactions between the inmates, there is simply no evidence suggesting that the officers were subjectively aware of the seriousness of the situation. *See Blackmore,* 390 F.3d at 896. Consequently, the court was correct in finding that no genuine dispute existed with regards to whether Clark and Davis acted with deliberate indifference, and the court declines to revisit the finding that both officers should be granted qualified immunity.

6

While Plaintiff also moves for reconsideration of the court's decision to dismiss her claim against Wayne State, she has presented no evidence of a palpable defect. *See* E.D. Mich. LR 7.1(h)(3). The court directly addressed the claims against Wayne County and concluded that Plaintiff had failed to demonstrate that the county's policies or training were constitutionally deficient. *Morgan ex rel. Campbell*, 2020 WL 5819570, at *7-9 (E.D. Mich. Sept. 30, 2020). So, given this finding, it is clear that the *Monell* claims against the county must also fail. Accordingly,

IT IS ORDERED that Plaintiff's Motion for Reconsideration (ECF No. 86) is DENIED.

        s/Robert H. Cleland        /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: April 1, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 1, 2021, by electronic and/or ordinary mail.

        s/Lisa Wagner        /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\17-12094.MORGAN.MotionforReconsideration.AAB.2.docx